IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ETERNIX, LTD.,

                          Plaintiff,

  v.

CIVILGEO, INC. and CHRIS MAEDER,

                          Defendants.

OPINION and ORDER

23-cv-633-jdp

---

      Plaintiff Eternix Ltd. brings claims for copyright infringement, misappropriation of trade secrets, breach of contract, and unjust enrichment against defendants CivilGEO, Inc. and Chris Maeder based on defendants' unauthorized copying of Eternix's software code. This court previously issued its summary judgment ruling on the claims against defendant Maeder only, Dkt. 176, because the case against CivilGEO was under an automatic bankruptcy stay. The bankruptcy court recently approved a stipulated modification to the automatic stay, which allows this court to issue its summary judgment ruling for CivilGEO. *In re. CivilGEO, Inc.*, No. 25-10731 (Bankr. W.D. Wis. May 6, 2025). Pursuant to the stay modification, this order resolves the summary judgment motions for CivilGEO. Otherwise, this case remains stayed until CivilGEO's bankruptcy stay lifts.

      Both Eternix and Maeder moved for summary judgment. Dkt. 95 and Dkt. 100. In its previous order, the court granted summary judgment to Eternix on whether Maeder had copied its software without authorization and on the other elements of liability for copyright infringement. Dkt 176. The court denied Maeder's motion in full. *Id.* The parties' arguments on summary judgment are the same for CivilGEO as for Maeder on almost all issues. So the

court adopts its opinion in Dkt. 176 and extends it to the claims against CivilGEO on all issues except one, explained below.

The only issue where the parties distinguish between the two defendants is related to Eternix's state-law contract claims. Those claims are premised on defendants' alleged violation of Eternix's software license agreement. Eternix says that defendants accepted the license agreement in 2011 and 2013 when they acquired copies of Eternix's software, ostensibly to evaluate it and determine whether to purchase a full license. Defendants moved for summary judgment on the basis that they never accepted the license agreement. The court rejected this argument for defendant Maeder, concluding that it was genuinely disputed whether Maeder had clicked "I agree" on the license agreement or otherwise entered into a contract with Eternix not to copy its software without authorization. Dkt. 176, at 27–30.

CivilGEO has a different reason why it is entitled to summary judgment that it didn't accept the license agreement. CivilGEO argues that Maeder was still working for his previous company, CM Water Group, when he acquired Eternix's software for evaluation purposes, so any agreement Maeder made with Eternix at that time was between Eternix and CM Water Group, not Eternix and CivilGEO. Eternix admits that Maeder told Eternix's staff that he worked for CM Water Group, not CivilGEO. But Eternix contends that CivilGEO is bound by the license agreement anyway, because CivilGEO and CM Water Group are corporate alter egos.

The corporate alter ego doctrine allows courts to pierce the corporate veil when a party uses the corporate form for an improper purpose. *Olen v. Phelps*, 200 Wis. 2d 155, 162–63, 546 N.W.2d 176 (Ct. App. 1996). "Piercing the corporate veil is not favored and in general, courts are reluctant to do so." *Judson Atkinson Candies, Inc. v. Latini–Hohberger Dhimantec*, 529 F.3d 371,

379 (7th Cir.2008). But "where applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim, the fiction is disregarded." *Milwaukee Toy Co. v. Indus. Comm'n*, 203 Wis. 493, 234 N.W. 748 (1931). Two companies can be treated as alter egos of each other if they were operated as functionally the same entity and if treating them separately would lead to an unjust result. *See Consumer's Co-op. of Walworth Cnty. v. Olsen*, 142 Wis. 2d 465, 484, 419 N.W.2d 211 (1988). Factors relevant to whether companies are functionally the same entity include whether they have the same leadership, whether corporate formalities were observed in how they interacted with each other, and whether they commingled assets. *Id.*

Here, a reasonable jury could find that Maeder operated CM Water Group and CivilGEO as functionally the same entity. Defendants have painted a wholly inadequate factual picture of the relationship between Maeder, CM Water Group, and CivilGEO. Defendants have not even explained basic facts about the companies, such as when Maeder came to own CivilGEO. Defendants say that Maeder "formed" CivilGEO in 2014. Dkt. 97, ¶ 13. But this is inconsistent with Wisconsin Department of Financial Institution (DFI) records, which show that the company now known as CivilGEO has existed since 1977; the only change that occurred in 2014 was a name change from "B-Int Successor Inc." to CivilGEO. Dkt. 99-2. Eternix pointed this out in its response brief to defendant's motion for summary judgment, but defendants provided no explanation for the inconsistency on reply. In its reply to its proposed findings of fact, defendants assert vaguely that B-Int. Successor was "not involved in the actions underlying the claims in this case." Dkt. 123, ¶ 13. But they don't say whether Maeder acquired the company before 2014, when the company's name changed to CivilGEO. This matters because defendants argue that Maeder wasn't acting as a representative of CivilGEO when he

3

acquired Eternix's software in 2011 and 2013. But a reasonable jury could disbelieve that because Maeder has provided no explanation at all for why his account of when CivilGEO was formed is inconsistent with state business records.

Defendants also don't explain how CivilGEO acquired GeoHECRAS, the software at issue in this case. Defendants say that Maeder designed GeoHECRAS for CM Water Group and that CM Water Group engaged a software development company to create it. But GeoHECRAS was released in 2014 as a CivilGEO product, apparently without any formal sale or other arrangement between CM Water Group and CivilGEO. Defendants' version of events is that Maeder simply dissolved CM Water Group and transferred his business enterprises to CivilGEO. But defendants have failed to explain why Maeder transferred his business enterprises to CivilGEO or whether he observed any corporate formalities in doing so. A reasonable jury could infer that Maeder drew no distinction between CM Water Group and CivilGEO, that he commingled assets such as the GeoHECRAS product, and that he failed to observe corporate formalities in how the two companies interacted with each other. A reasonable jury could also find that Maeder did these things at least in part to prevent Eternix from discovering the unauthorized copying of its software. Maeder dissolved CM Water Group and formed CivilGEO around the same time GeoHECRAS was released. A reasonable jury could infer from the suspicious timing that Maeder wanted GeoHECRAS released under a company name that Eternix didn't know about to reduce the likelihood of Eternix discovering the product.

The court concludes that there are genuine disputes of fact on the issue whether CM Water Group and CivilGEO are alter egos of each other, so CivilGEO's motion for summary judgment on the breach of contract claims is denied. As for the other issues, CivilGEO's motion

for summary judgment is denied in full and Eternix's motion is granted in part as summarized on page 31 of Dkt. 176.

ORDER

IT IS ORDERED that:

1. Plaintiff Eternix Ltd.'s motion for summary judgment, Dkt. 100, is GRANTED in part for defendant CivilGEO as described in Dkt. 176.

2. CivilGEO's motion for summary judgment, Dkt. 95, is DENIED.

3. This case remains STAYED until CivilGEO's bankruptcy stay lifts.

Entered June 5, 2025.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge